IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| JEREMY DUANE CROFFORD, | ) | |
|---|---|---|
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. CIV-10-279-F |
| | ) | |
| JAMES RUDICK, Warden, | ) | |
| | ) | |
| Respondent. | ) | |

**REPORT AND RECOMMENDATION**

Mr. Jeremy Crofford is a state inmate seeking a writ of habeas corpus. The Court should deny his request.

BACKGROUND

Mr. Crofford entered a "blind plea" of guilty to the crimes of first degree murder, discharging a firearm from a vehicle, and assault with a dangerous weapon.[1] For these crimes, the Petitioner was sentenced to prison terms of life,[2] 35 years, and 10 years. *See* Judgment and Sentence at p. 1, *State v. Crofford*, Case No. CF-2007-6933 (Okla. Co. Dist. Ct. Feb. 27, 2009).

---

[1] *See* Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody at p. 1 (Mar. 18, 2010) ("Petition"); Response to Petition for Writ of Habeas Corpus at p. 1 (Apr. 29, 2010) ("Response").

[2] In his petition, Mr. Crofford asserts that he was sentenced to life without the possibility of parole. Petition at p. 1. But the sentencing transcript and judgment do not say that Mr. Crofford is ineligible for parole. *See* Transcript of the Proceedings at p. 87, *State v. Crofford*, Case No. CF-2007-6933 (Okla. Co. Dist. Ct. Feb. 20, 2009); Judgment and Sentence at p. 1, *State v. Crofford*, Case No. CF-2007-6933 (Okla. Co. Dist. Ct. Feb. 27, 2009).

After sentencing, the Petitioner moved to withdraw the guilty plea. Letter, *State v. Crofford*, Case No. CF-2007-6933 (Okla. Co. Dist. Ct. Mar. 2, 2009). After a hearing,[3] the state district court rejected the motion[4] and Mr. Crofford appealed.[5] The Oklahoma Court of Criminal Appeals ("OCCA") affirmed. Summary Opinion Denying Certiorari at pp. 1-3, *Crofford v. State*, Case No. C-2009-318 (Okla. Crim. App. Nov. 3, 2009) ("OCCA Certiorari Opinion").

The Petitioner then initiated the present action, alleging:

- involuntariness in the guilty plea,

- lack of a factual basis for the guilty plea, and

- error in the OCCA's rejection of his *certiorari* appeal.

Petition at pp. 5-11.

## STANDARD FOR HABEAS RELIEF

The applicable standard turns on how the state appellate court had treated the underlying issue.

---

[3] *See* Transcript of the Proceedings at pp. 1-158, *State v. Crofford*, Case No. CF-2007-6933 (Okla. Co. Dist. Ct. Apr. 1, 2009) ("Transcript of Hearing on the Motion to Withdraw Plea of Guilty").

[4] Transcript of Hearing on the Motion to Withdraw Plea of Guilty at pp. 152-56.

[5] Brief of Petitioner, *Crofford v. State*, Case No. C-2009-318 (Okla. Crim. App. Sept. 4, 2009).

When the state appellate court does not address the merits, the federal district court exercises its independent judgment. *See*, *e.g.*, *Hain v. Gibson*, 287 F.3d 1224, 1229 (10th Cir. 2002).

If the OCCA did rule on the merits, the federal district court bears a "secondary and limited" role. *See Castro v. Ward*, 138 F.3d 810, 815 (10th Cir. 1998).

For example, when factual allegations are involved, a federal court can grant habeas relief only if the state court had made "an unreasonable determination of the facts in light of the evidence presented." Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254(d)(2) (2006).[6]

The federal district court also engages in limited scrutiny of legal determinations when the state's highest court has addressed the merits. In these circumstances, the federal court considers only whether the state appeals court's conclusions were "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254(d)(1) (2006).

---

[6] Federal law also creates a presumption of correctness for factual findings in state court, creating a burden for the petitioner to present clear and convincing evidence. Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254(e)(1) (2006). Some courts decline to apply this presumption in the absence of a federal evidentiary hearing. *See Wood v. Allen*, __ U.S. __, 130 S. Ct. 841, 849 n.2 (2010). Such a hearing is unnecessary here because Mr. Crofford had a full and fair opportunity to present his evidence of coercion at a proceeding in state district court. *See Vigil v. Zavaras*, 298 F.3d 935, 944 (10th Cir. 2002) (stating that under pre-AEDPA standards, an evidentiary hearing was necessary in federal court only in the absence of a full and fair evidentiary hearing in state court). In the absence of a federal evidentiary hearing, the Court can assume *arguendo* that the presumption of correctness does not apply.

The threshold issue is whether federal law clearly establishes the constitutional protection underlying the Petitioner's claim. "A legal principle is 'clearly established' . . . only when it is embodied in a holding of [the Supreme Court]." *Thaler v. Haynes*, __ U.S. __, 130 S. Ct. 1171, 1173 (2010). For this purpose, Supreme Court holdings "must be construed narrowly and consist only of something akin to on-point holdings." *House v. Hatch*, 527 F.3d 1010, 1015 (10th Cir. 2008). In the absence of Supreme Court precedents, "a federal habeas court need not assess whether a state court's decision was 'contrary to' or involved an 'unreasonable application' of such law." *Id.* at 1017.

If the underlying constitutional right is clearly established, the federal district court must ask whether the state court decision was contrary to Supreme Court precedent.[7] These circumstances may exist when the state court had:

- applied a rule that conflicted with governing Supreme Court holdings or

- reached a conclusion different from the Supreme Court on materially indistinguishable facts.

*See Williams v. Taylor*, 529 U.S. 362, 405-406 (2000) (citation omitted).

If these circumstances are absent, the federal district court must determine whether the state court decision involved an unreasonable application of Supreme Court precedents. *See supra* p. 4 (quoting *Hicks v. Franklin*, 546 F.3d at 1283). Application of Supreme Court precedent is considered "unreasonable" when the state court unreasonably extends, or refuses

---

7   *See Hicks v. Franklin*, 546 F.3d 1279, 1283 (10th Cir. 2008) ("If there is clearly established federal law, we then consider whether the state court decision was contrary to or involved an unreasonable application of it." (citation omitted)).

4

to extend, prior decisions. *See House v. Hatch*, 527 F.3d at 1018. If prior Supreme Court cases do not "clear[ly] answer . . . the question presented," the habeas court cannot regard the application of federal law as unreasonable. *Wright v. Van Patten*, 552 U.S. 120, 126 (2008) (*per curiam*) (citation omitted).

KNOWLEDGE AND VOLUNTARINESS OF THE GUILTY PLEA

Mr. Crofford alleges that his guilty plea was not knowing and voluntary because of attorney coercion,[8] including intentional deception regarding the maximum sentences and ignorance of the rights being waived.[9] The federal district court should reject these claims, as the state courts reasonably concluded that the plea was knowing and voluntary.

I.     Clearly-Established Federal Law

"On review, a federal court may set aside a state court guilty plea only for failure to satisfy due process." *Cunningham v. Diesslin*, 92 F.3d 1054, 1060 (10th Cir. 1996) (citation omitted). The Supreme Court clearly established the due process standard in *Boykin v. Alabama*, 395 U.S. 238, 242 (1969), holding that acceptance of a guilty plea is permissible

---

[8]     The Respondent addresses a claim of ineffective assistance of counsel "to the extent the Petitioner raises [such a claim]." Response at pp. 18-20. No such claim was raised in the petition. *See* Petition, *passim*.

[9]     Petition at pp. 5-8.

only when it is knowing and voluntary.[10] Under *Boykin*, the defendant must have "a full understanding of what the plea connotes and of its consequence."[11]

II. The OCCA's Findings

After "thorough consideration of the propositions, and the entire record before [it] on appeal, including the original record, transcripts, and [the] Petitioner's brief," the OCCA rejected Mr. Crofford's claim that his plea was not knowing and voluntary. OCCA Certiorari Opinion at p. 2. The court concluded in relevant part:

> [Mr. Crofford] completed a written Summary of Facts on Plea of Guilty prior to entering his pleas. The trial court held a thorough plea colloquy with [the] Petitioner, ensuring that he was competent, satisfied with counsel's assistance, and willing to forgo a jury trial and admit the facts necessary to support the State's charges. A few weeks later, the court entertained considerable evidence from the defense in mitigation of sentence. Finally, when [Mr. Crofford] expressed second thoughts about his pleas, the court appointed new counsel for him and held another hearing, receiving testimony from [the] Petitioner and his original counsel. Contrary to [the] Petitioner's claims, the extensive record supports the trial court's conclusion that [Mr. Crofford] (1) voluntarily waived all rights associated with a jury trial . . .; [and] (2) was clearly informed of the sentences he could receive[.]

*Id.* at pp. 2-3.

---

[10] Citing *Boykin v. Alabama*, the Tenth Circuit Court of Appeals stated: "Clearly established Supreme Court authority . . . require[s] the trial court, when a defendant enters a guilty plea, to determine whether the defendant is doing so knowingly and voluntarily." *Charm v. Mullin*, 37 Fed. Appx. 475, 481 n.2 (10th Cir. June 13, 2002) (unpublished op.) (citing *Boykin v. Alabama*, 395 U.S. 238, 242-44 (1969)).

[11] *Boykin v. Alabama*, 395 U.S. 238, 244 (1969).

6

III.  Knowledge and Voluntariness

According to the Petitioner, his trial attorney coerced a guilty plea through "long hours of continual harassment" and intentional deception concerning the potential length of the sentences. Petition at pp. 5-8. Mr. Crofford also alleges that he did not understand his rights or the fact that he was waiving them. *Id.* at p. 5. The Court should reject this claim.

The record establishes that Mr. Silas Lyman, one of Mr. Crofford's attorneys, had two lengthy meetings with the Petitioner. The first was at the county jail and included substantial review and discussion of the photographs, evidence, potential defenses, jury instructions, and the "pros and cons" of a blind guilty plea. Transcript of Hearing on the Motion to Withdraw Plea of Guilty at pp. 99, 104. Following that meeting, defense counsel prepared for trial to a point of readiness. *Id.* at pp. 101-102, 123.

The second meeting occurred on the morning the case was set to go to trial, when Mr. Lyman was told that the Petitioner was interested in a guilty plea. *See id.* at pp. 102-104, 124. According to the attorney, substantial time was spent on the "pros and cons" of such a plea, negotiations with the State to amend the charge, and completion of documents. *Id.* at pp. 104-106, 127, 134-135. Mr. Lyman denied that he had acted coercively and stated that the Petitioner had expressed understanding of the questions posed in the plea of guilty summary of facts form. *Id.* at pp. 100, 106-108.

Mr. Lyman also testified that he and Mr. Crofford had discussed the sentencing possibilities, including the potential that the trial court might "split" the first degree murder sentence. *Id.* at pp. 108-109. However, the attorney stated that he had told the Petitioner that

7

"potential is different than probability" and that with a "blind plea, . . . you just don't know what you're going to get, there can't be [any] guarantees." *Id*. at pp. 109, 128. Mr. Lyman testified that he had told Mr. Crofford of the inability to "promise . . . anything," had encouraged entry of a plea "based on the idea that [he was] only going to at best get life with other concurrent sentences," and had admonished against any assumption that he would obtain a suspended sentence. *Id.* at pp. 109-110.

According to a deputy sheriff that observed the meeting:

- Mr. Crofford did not "appear to be . . . abused or mistreated by either of [his] lawyers,"

- the Petitioner did not appear to be "badgered or bullied by either of the lawyers,"

- "the lawyers were laying out all [the Petitioner's] options, all possible options, the whole spectrum,"

- the lawyers were "going above and beyond the call of duty," and

- Mr. Crofford participated in trying to negotiate with the State, requesting the attorneys to "ask [the State] and see if [he could] get this."

*Id.* at pp. 80-85.

While entering his guilty plea, Mr. Crofford stated under oath that he understood:

- the relevant forms,

- the "nature and purpose and consequences" of the proceedings,

- the fact that the first degree murder charge was an "85 percent crime," meaning that for a life sentence he would have to serve at least 38 years,

- the availability of only two possible sentences, life imprisonment with or without the possibility of parole, and

- his entitlement to a jury trial and his waiver of that right.

Transcript of Proceedings at pp. 2-6, *State v. Crofford*, Case No. CF-2007-6933 (Okla. Co. Dist. Ct. Jan. 12, 2009) ("Transcript of Hearing on the Guilty Plea").

The Petitioner further stated under oath that counsel had advised him, that he believed his attorneys had been effective, and that he was "satisfied with their representation." *Id.* at p. 7. Mr. Crofford swore that he had not been "forced, abused, mistreated, or promised anything" to enter the guilty plea and was doing so of his "own free will without any coercion or compulsion of any kind." *Id.* at p. 11. Before accepting the blind plea, the trial court asked:

> Do you wish to change your plea of not guilty to guilty, and do you understand that you give up your rights to a jury trial and all other previous explained constitutional rights? Do you understand that?
>
> . . . .
>
> And there is no plea agreement. This is a blind plea, is that correct?
>
> . . . .
>
> Do you understand that I can sentence you to incarceration within the parameters I just laid out, life, life without parole . . . . ? Do you understand that?

*Id.* at p. 7. Mr. Crofford answered in the affirmative to each question. *See id.*

9

Mr. Crofford memorialized these sworn statements in his Plea of Guilty and Summary of Facts form. *See* Plea of Guilty and Summary of Facts at pp. 1-6, *State v. Crofford*, Case No. CF-2007-6933 (Okla. Co. Dist. Ct. Jan. 12, 2009) ("Plea of Guilty and Summary of Facts").

Consequently, the trial court declared:

> You have been sworn. Your signature's at the bottom of [the Plea of Guilty and Summary of Facts form]. Your answers are true and correct. Do you understand you can be prosecuted for perjury if you've made a false statement? You have the statement of defense counsel. Okay. I'm going to find that you were sworn and responded to the questions under oath, that you understand the nature, purpose and consequences of this proceeding, that [Mr. Crofford's] pleas of guilty are knowingly and voluntarily entered and are accepted by the Court.

Transcript of Hearing on the Guilty Plea at pp. 12-13.

The state courts acted reasonably when they applied the *Boykin* test and found from the evidence that the guilty plea was knowing and voluntary. *See supra* pp. 6, 10. As a result, the federal district court should reject the habeas claim. *See supra* pp. 3-5.

## EXISTENCE OF A FACTUAL BASIS FOR THE GUILTY PLEA

According to the Petitioner, he has always maintained that he "did not intend to kill anyone on the night in question." Petition at p. 7. Thus, Mr. Crofford alleges a constitutional violation through the lack of a factual basis for the guilty plea.[12] *Id.* at p. 9. This claim is invalid as a matter of law.

---

[12] Mr. Crofford seems to limit this claim to the charge of first degree murder. *See* Petition at p. 9.

The Supreme Court has not established a general constitutional requirement of a factual basis for entry of a guilty plea. *See Higgason v. Clark*, 984 F.2d 203, 207-208 (7th Cir. 1993) (holding that *North Carolina v. Alford*, 400 U.S. 25 (1970), "certainly does not imply that the factual-basis requirement of Fed.R.Crim.P. 11(f) and its state-law counterparts comes from the Constitution" (citations omitted)).[13]

The Tenth Circuit Court of Appeals has recognized a narrow exception when a defendant protests his innocence at the time of the plea.[14] This line of case law reflects an extension of the holding in *North Carolina v. Alford*, 400 U.S. 25, 37-38 (1970). There the Supreme Court upheld the constitutionality of a trial judge's acceptance of a guilty plea "[i]n view of the strong factual basis for the plea demonstrated by the State and [the defendant's] clearly expressed desire to enter it despite his professed belief in his innocence." *North Carolina v. Alford*, 400 U.S. 25, 38 (1970). But this holding did not clearly establish a constitutional requirement of a factual basis for a guilty plea when the defendant protests his innocence. The Seventh Circuit Court of Appeals explained:

---

[13] After the Supreme Court's issuance of a decision in *North Carolina v. Alford*, the Tenth Circuit Court of Appeals has held on multiple occasions that the federal constitution does not ordinarily require a factual basis for acceptance of a guilty plea. *E.g.*, *Sena v. Romero*, 617 F.2d 579, 581 (10th Cir. 1980) ("Sena's contention that the absence of a record showing of a factual basis for his plea is an independent ground for invalidating the plea, is without merit." (citation omitted)); *Freeman v. Page*, 443 F.2d 493, 497 (10th Cir. 1971) (holding that the federal procedural requirement for a factual basis underlying a guilty plea is not mandated by the constitution and "is not binding on the State Courts").

[14] *See, e.g.*, *Berget v. Gibson*, 188 F.3d 518, 1999 WL 586986, Westlaw op. at 5 (10th Cir. Aug. 5, 1999) (unpublished op.) ("Only when the defendant claims his factual innocence while pleading guilty . . . have state courts been constitutionally required to establish a factual basis for a plea." (citations omitted)).

> "If A then B" does not imply "if not-A then not-B." *Alford* tells us that strong evidence on the record can show that a plea is voluntary; it does not hold that *only* strong evidence on the record permits a finding of voluntariness. And it certainly does not imply that the factual-basis requirement of Fed.R.Crim.P. 11(f) and its state-law counterparts comes from the Constitution.

*Higgason v. Clark*, 984 F.2d 203, 207 (7th Cir. 1993) (citations omitted; emphasis in original). In light of the absence of a Supreme Court holding that requires a factual basis for a guilty plea, Mr. Crofford's habeas claim is invalid as a matter of law. *See supra* pp. 3-5.

Even if a factual basis were necessary, however, the state courts acted reasonably when they found one.

Mr. Crofford initially stated to the trial court that he "had no intention on killing anybody that night." Transcript of Hearing on the Guilty Plea at p. 8. But defense counsel explained that the Petitioner seemed confused about the timing surrounding the formation of intent. *See id.* After Mr. Crofford was allowed to talk to counsel, the following exchange took place:

> COURT: You've had a chance to talk to your lawyers. I need to - - I need to understand what your intent was that night.
>
> MR. CROFFORD: I mean, I guess I intended to kill Ricky Smith that night.
>
> COURT: You did?
>
> MR. CROFFORD: Yes, sir.
>
> COURT: Why did you a while ago say you had no intent to kill anybody? What's the truth? You're under oath.
>
> ATTORNEY: Your Honor, if I may.

12

| COURT: | Well, I need to know what's in his head. |
| --- | --- |
| ATTORNEY: | Part of it is a time frame, things that led up to that point in time. He understands that the moment in time that he was actually shooting the gun, that's when he had made the intent. |

. . . .

| COURT: | Well, I understand that. But I asked you, did you intend to kill him and he said he had no intent to kill anyone that night. Right? |
| --- | --- |
| MR. CROFFORD: | Yes, sir. |
| COURT: | Well now, what's the truth? Is this - - are you trying to scare somebody or are your doing something recklessly, is it - - you know, there is a whole lot of different things that can enter into this and you're not guilty of murder unless you decide and you made the conscience [sic] decision to kill this man and you went there and shot him and it looks like you wounded somebody who happened to be in the area. That's called transferred intent.<br><br>You tell me. If you're guilty of murder, that's fine. If you're not guilty of murder and if you didn't intend to kill him, that's a different situation and the jury may decide if that's true. Fair enough? You understand what I'm saying to you? This is important stuff. Do you understand? |
| MR. CROFFORD: | Yes, sir. |
| COURT: | All right. So what's the truth? Under oath what's the truth about what was in your head when you pulled that trigger? |
| MR. CROFFORD: | I was trying to kill Ricky Smith. |

*Id.* at pp. 9-11.

Because Mr. Crofford ultimately admitted that he had intended to kill another person, his claim does not involve the entry of a guilty plea with a contemporaneous protestation of innocence. The absence of such a protestation is fatal to the habeas claim.[15]

### ALLEGED ERROR IN THE OCCA'S DECISION ON *CERTIORARI*

Finally, Mr. Crofford seeks habeas relief on grounds that the OCCA's decision on *certiorari* was "contrary to federal law" because the state court "totally disregarded the relevant facts . . . and the evidence adduced in the lower district court." Petition at p. 11.

On habeas review, the Court decides only "whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (citations omitted). Based on the body of Supreme Court precedents, the OCCA reasonably held that the guilty plea was constitutionally valid. *See supra* pp. 5-14. Finally, the Petitioner does not describe the "relevant facts" or "evidence" ignored by the OCCA. *See* Petition at p. 11. Consequently, the Petitioner has not demonstrated a basis for habeas relief on the independent ground of OCCA error.[16]

---

[15] The Tenth Circuit Court of Appeals has stated: "[C]ourts are constitutionally required to establish the factual basis of the plea only if the defendant claims factual innocence when he pleads guilty. Because Mr. Washington did not claim factual innocence when he pled guilty, his first ground for relief [that the state court accepted his plea without a factual basis] does not state a constitutional violation." *Washington v. Workman*, 2010 WL 1645137, Westlaw op. at 1 (10th Cir. Apr. 26, 2010) (unpublished op.) (citation omitted).

[16] *See Bodine v. Warden of Joseph Harp Correctional Center*, 217 Fed. Appx. 811, 813 (10th Cir. Feb. 22, 2007) (unpublished op.) (holding that a "blanket attack" on the OCCA's handling of a direct appeal "does not state a cognizable claim for federal habeas relief").

RECOMMENDATION AND NOTICE OF THE RIGHT TO OBJECT

For the reasons discussed above, the Court should deny Mr. Crofford's request for a writ of habeas corpus.

The Petitioner can object to this report and recommendation. To do so, Mr. Crofford must file an objection with the Court Clerk for the Western District of Oklahoma. The deadline for objections is June 28, 2010. *See* Fed. R. Civ. P. 6(d), 72(b)(2); 28 U.S.C. § 636(b)(1) (2006). The failure to timely object would foreclose appellate review of the suggested ruling.[17]

STATUS OF THE REFERRAL

The referral is discharged.

Entered this 11th day of June, 2010.

*Robert E. Bacharach*
Robert E. Bacharach
United States Magistrate Judge

---

[17] *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991); *see also Marshall v. Chater*, 75 F.3d 1421, 1426 (10th Cir. 1996) ("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").